Opinion of. the court by
Trotter, Justice.
This is a contest between the plaintiff in error as a judgment' creditor of one Philip G. Tucker, and the defendant, as to the title-of a negro girl, which was seized under an execution as the property of Tucker, to satisfy the plaintiff’s judgment. Williams claimed the slave as his property, and an issue to try the title was made up and submitted to a jury, who found a verdict in favor of the claimant.
The proof is quite clear in support of the title of Williams.— But the slave is sought to fee made liable to Moseby’s execution, on the ground that Tucker had the possession uninterruptedly for five years in the state of Tennessee, by the laws of which state such possession conferred an absolute title on Tucker. Tucker is the son-in-law of the claimant, and received the possession of the slave in Tennessee, in 1830, and continued in possession until 1836, when he removed to Mississippi. It appears that at the time the negress was sent to Tucker, Williams declared his intention only to make a loan of the property for the benefit of his daughter. This express declaration so made at the time exempts the transaction from the operation of the doctrine established by the court in the case of Fitzhugh v. Anderson, 2 Hen. & Munf. 289. In that case the loan was never avowed until the slaves were set up for sale, and the possession had continued for fifteen years. The principle which is stated in that and other cases *523 upon this subject is, that if property is placed in the possession of another, as by a father-in-law with his son-in-law, and nothing is said as to a loan, nor as to what time it shall continue, or other qualification imposed, it will amount to a gift. The case of Stewart v. Cheatham, 3 Yerger’s Rep. 60, recognizes this doctrine also. But whilst the court lay down the rule as thus stated, it is expressly stated in the last mentioned case, that this is a presumption merely, and as such is liable to be defeated by proper counteracting proof.
We do not feel inclined to consider this transaction in the light of a gift, more especially as the circumstances which are connected with it strongly fortify the proof of a contrary intention in Williams. Tucker resided, at the time the slave went into his possession, on the same plantation with his father-in-law, was notoriously insolvent, and in distressed circumstances. There were judgments then against him in Tennessee, for a large amount. It would have been therefore worse than folly in Williams to make to him an absolute gift of the property, thus rendering ip liable to an immediate sale to satisfy Tucker’s debts. This was at war with his benevolent and paternal feelings towards a destitute daughter. The proof is, that he acted more consistently with duty and a just discretion, by making a loan merely of the property, and so asserting at the time. This testimony is further fortified by the additional fact, that during all the time the property so continued with Tucker, Williams paid the taxes for it to the government.
But it is urged in support of Moseby’s claim as creditor, that by the continued possession of the property by Tucker for five years in Tennessee, he acquired a title which must prevail against all the world, under the statute of limitations of that state. There is no doubt that if Tucker became vested with the absolute right under the law of Tennessee, the courts of this country would be bound to protect it. But we are not prepared to assert in view of the proofs before us, that such is the case. Tucker has never been in the possession .of this property claiming it as his own, nor does he appear to have exercised any act of ownership over it, or to have controlled it otherwise than in *524 accordance with the paramount title of Williams, whom he has always recognized as the absolute owner.
The statute of Tennessee cannot, we apprehend, any more than other limitation laws, apply to the relation of bailor and bailee, and entitle the latter to the benefit of the bar against his bailor. The statute can only operate where the possession is adverse. In the case at bar, the possession of Tucker was with the consent of Williams, was in subordination to the superior title of the latter, and was therefore emphatically his possession. This is a universal principle. The cases therefore which have been relied' on by the counsel for the plaintiff, do not apply. On the contrary, they expressly sanction the distinction here taken. Thus, in Stewart v. Cheatham, 3 Yerger, 60, it is stated, that to entitle the party to the benefit of the bar, the possession must be adverse. In Brent v. Chapman, 5 Cranch, 360, the question was made, whether the possession of five years by the claimant, was adverse, so as to entitle him to the benefit of the act of Virginia, which appears to be similar to that of Tennessee. It is manifest from the remarks of Judge Marshall, that if such had not been found to be the case, the bar under the statute would not have been allowed. There the party in possession claimed under a purchase from the sheriff, who sold the slave under execution. The case of Shelby v. Guy, 11 Wheat. 370-71, sustains the same doctrine.
The act of 1822 “to prevent frauds and perjuries,” cannot affect the present controversy. It was much short of three years after the removal of Tucker into this state, when the execution was levied, and Williams is allowed three years by that act to make a record of the loan.
The judgment must be affirmed.